20511

The STATE, Respondent, v. George DENSON, Jr., Appellant.

(237 S. E. (2d) 761)

*Betty M. Sloan,* of Columbia, *for Appellant,*

*Daniel R. McLeod, Atty. Gen., Brian P. Gibbes, Robert N. Wells, Jr., Asst. Attys. Gen.,* and *Sarah G. Young, Staff Atty.,* and *James C. Anders, Sol.,* of Columbia, *for Respondent,*

September 13, 1977.

GREGORY, Justice:

This is an appeal by George Denson, Jr. from a conviction by a jury of murder and armed robbery. Appellant contends that the trial judge erred by admitting into evidence certain photographic identification. Finding no error, we affirm.

On February 20, 1974, an armed robbery and shooting took place at Joyner's Store in Columbia, South Carolina. Mr. Elmer Joyner, one of the store's owners, was fatally wounded by shots fired by one of four black males who committed the robbery. A customer in Joyner's Store, Mr. Staley Clemmer, witnessed the murder and robbery.

In April, 1974, appellant was arrested, along with four others, on an unrelated charge in Charleston, South Carolina and subsequently returned to Richland County. On June 25, 1974, Mr. Clemmer was presented a fourteen picture photographic line-up at the Richland County Coroner's Office from which he picked out appellant's photograph and the photographs of two other men. He identified these photographs as being the pictures of three of the four men he saw rob Joyner's Store.

At appellant's separate trial all fourteen photographs were marked for identification. From this array Mr. Clemmer

selected three and identified them as being the same three photographs he had selected and identified in the Coroner's Office on June 25, 1974. The three photographs were then offered and admitted into evidence. Although appellant objected to the introduction of the three photographs, he did not challenge the fairness and propriety of the photographic line-up itself. Neither did he attempt to demonstrate unfairness by having the eleven additional photographs admitted. Mr. Clemmer was not asked by either party to make an in-court identification of appellant.

The three photographs that were admitted were not the juxtaposed front and profile "mug shots" that are associated by the public with a criminal record, but presented only a frontal view of the subject's head and shoulders. In each photograph the subject had a placard hanging from his neck. The placard was covered by tape placed on the photograph. On one photograph the tape was placed so that the words "Richland County" were partly visible. Testimony before the jury revealed that the photographs were taken from the files of the Richland County Sheriff's Department and the Columbia Police Department.

At trial the appellant presented no evidence and did not take the stand.

On appeal appellant challenges the admissibility of the three photographs by arguing that there was a substantial likelihood that Mr. Clemmer misidentified the appellant's photograph; that the three photographs revealed to the jury the existence if a prior criminal record when appellant's character had not been placed in issue; and that the State should have been required to introduce all fourteen photographs.

The use at trial of photographic identification has been most recently considered by the United States Supreme Court in *Manson v. Brathwaite*, ... U. S. ..., 97 S. Ct. 2243, 2253, 53 L. Ed. (2d) 140, 154 (1977), where Mr. Justice Blackmun, speaking for the majority, stated:

We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. The factors to be considered are set out in *Neil v. Biggers,* 409 U. S. 188, at 199-200, 92 S. Ct. 375, 34 L. Ed. (2d) 401. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Mr. Clemmer testified that although he could see only the back of one robber, he was able to view all four robbers at close range; that the store was well lighted; and that he saw three of the four quite well. His description of the robbers to the police was sufficiently accurate, and he positively identified appellant's picture at the photographic line-up. Only four months passed between the time of the robbery and Mr. Clemmer's identification of appellant's photograph. These indicators of Mr. Clemmer's ability to make an accurate identification greatly outweigh any corrupting effect of the challenged identification.

Under the totality of the circumstances, we cannot say there is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U. S. 377, at 384, 88 S. Ct. 967, at 971, 19 L. Ed. (2d) 1247 (1968). As the Court stated in *Manson, supra:*

We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some question-

able feature. ... U. S. at ..., 97 S. Ct. at 2254, 53 L. Ed. (2d) at 155.[1]

Both parties direct our attention to *United States v. Harrington,* 490 F. (2d) 487 (2nd Cir. 1973) where the court listed three prerequisites to a ruling that the introduction of "mug shot" type photographs does not result in reversible error:

1. The Government must have a demonstrable need to introduce the photographs; and

2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs. 490 F. (2d) at 494.

First, there was a "demonstrable need" on the part of the State to introduce the photographs. In the absence of an in-court identification, these photographs were an essential element of the State's case.

Second, the photographs did not imply that appellant had a prior criminal record. The photographs were not the juxtaposed full face and profile photographic display normally associated with "mug shots." Neither did the appearance of the words "Richland County" on one of the photographs inform the jury that appellant had a prior criminal record.

---

[1] In a footnote to its opinion in *Manson,* ... U. S. at ..., 97 S. Ct. at 2252, 53 L. Ed. (2d) at 153, The Supreme Court emphasized the important role played by defense counsel in a trial where identification testimony is employed and relied on by the State:

". . . while identification testimony is significant evidence, such testimony is still only evidence, and unlike the presence of counsel, is not a factor that goes to the very heart—the 'integrity'—of the adversary process.

"Counsel can both cross-examine the identification witnesses and argue in summation, as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi." *Clemons v. United States,* 133 U. S. App. D. C. 27, 48, 408 F. (2d) 1230, 1251 (1968), (concurring opinion) (footnote omitted), cert. denied, 394 U. S. 964, 89 S. Ct. 1318, 22 L. Ed. 567 (1969).

The jury heard testimony that appellant had been arrested in Charleston two months after the robbery and it is much more likely the jury assumed the picture was taken by the police when the appellant was arrested. *See: United States v. Calarco,* 424 F. (2d) 657 (2nd Cir. 1970), cert. denied, 400 U. S. 824, 91 S. Ct. 46, 27 L. Ed. (2d) 53, reh. denied, 402 U. S. 934, 91 S. Ct. 1522, 28 L. Ed. (2d) 870. Although the trial judge did not instruct the jury to draw no inferences from the taped-over placards, this failure was not reversible error in view of appellant's failure to request the trial judge to charge the jury accordingly.

Third, there is no intimation in the record that the admission of the photographs in any way focused the jury's attention on the source of the pictures. The jury was told at one point in the trial that the photographs came from the files of the Richland County Sheriff's Department and the Columbia Police Department, but this testimony only explained the source of the photographs, it did not "draw particular attention to the source or implications of the photographs." *iarrington, supra.*

Thus, the admission of these photographs into evidence complied with both *Manson, supra,* and *Harrington, supra.*

We further hold that it was not error for the trial judge to admit the three photographs without requiring the State to introduce the eleven other pictures so as to place the entire photographic line-up before the jury. Appellant did not move to have all fourteen photographs admitted and his contention that the trial judge should have done so on the court's own motion is without merit.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.