**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Ronnie Martin, Appellant.

Appellate Case No. 2015-001065

———

Appeal From Saluda County
R. Knox McMahon, Circuit Court Judge

———

Unpublished Opinion No. 2017-UP-246
Heard June 1, 2017 – Filed June 21, 2017

———

**AFFIRMED**

———

Molly Renee Hamilton Cawley, of MHC Law, LLC, of Charleston; and Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Vann Henry Gunter, Jr., both of Columbia; and Solicitor Samuel R. Hubbard, III, of Lexington, for Respondent.

———

**PER CURIAM:** Ronnie Martin appeals his conviction for first-degree burglary, arguing the trial court erred in (1) excluding evidence of third-party guilt, (2)

admitting recorded jail calls, and (3) refusing to instruct the jury on the lesser-included offense of second-degree burglary. Martin also argues the solicitor's opening and closing statements so infected the trial with unfairness that it deprived him of due process, and he contends his conviction should be reversed because of the cumulative errors of the trial court. We affirm.

1. We find the trial court correctly determined that Martin's testimony regarding his conversations with Quinton Samuels fails to meet the standard for third-party guilt evidence. The admissibility of a witness's prior inconsistent statement under Rule 801(d)(1)(A), SCRE, requires further scrutiny when those statements concern evidence of third-party guilt. *State v. Rice*, 375 S.C. 302, 317, 652 S.E.2d 409, 416 (Ct. App. 2007), *overruled on other grounds by State v. Byers*, 392 S.C. 438, 710 S.E.2d 55 (2011).

> [T]he evidence offered by [the] accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence [that] can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose.

*State v. Gregory*, 198 S.C. 98, 104–05, 16 S.E.2d 532, 534–35 (1941) (citations and internal quotation marks omitted); *see, e.g.*, *State v. Cooper*, 334 S.C. 540, 547–50, 514 S.E.2d 584, 588–89 (1999) (finding a witness's testimony that the witness overheard a third party admitting to the crime with which the defendant was charged was inadmissible under *Gregory* because, aside from the witness's assertions, there was no credible evidence linking the third party to the crime).

During the proffer, Martin was asked whether he knew who committed the burglary and, in response, stated, "Well, [Samuels] . . . came by earlier that day and asked me to go with him to make a lick." "Lick" is slang for a break-in or robbery. He testified that, after he was imprisoned, he speculated that Samuels committed the

robbery because he saw Samuels shortly after the robbery had occurred and Samuels admitted to committing a robbery. Martin further testified that Samuels told him he stole a purse but threw the purse behind a house because he was being chased by the police. When Samuels testified, he could not recall the night of the burglary. Aside from Martin's assertions, there is no credible evidence linking Samuels to the crime.

Additionally, we find Martin's argument that Samuel's second statement was admissible as an excited utterance or present sense impression is not preserved because Martin did not raise the argument to the trial court. *See State v. Garner*, 389 S.C. 61, 66, 697 S.E.2d 615, 617 (Ct. App. 2010) ("[I]n order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court.]"); *id.* ("[A]rguments raised for the first time on appeal are not preserved for [appellate] review[.]").

2.    We find the trial court properly admitted the recorded jail telephone calls between Martin and his girlfriend, Kimberly Gantt. Title III of the Omnibus Crime Control and Safe Streets Act prohibits, with certain exceptions, the interception of "any wire, oral or electronic communication" in the absence of a court order. *See* 18 U.S.C. §§ 2511(1), 2516 (2015). However, the prohibitions of the statute do not apply to the recording of prisoners' conversations on institutional telephones if the recordings are made pursuant to the "law enforcement" exception or if a party consents to the interception. *United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002). The law enforcement exception "excludes from the definition of 'interception' recordings made by 'any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by . . . an investigative or law enforcement officer in the ordinary course of his duties.'" *Id.* (quoting 18 U.S.C. § 2510(5)(a)(ii)); *see id.* at 191–92 (finding a prisoner's calls were not "intercepted" and, therefore, not prohibited by the statute because "the recordings were made as part of [the prison's] routine monitoring"). Pursuant to the consent exception, "[i]t shall not be unlawful . . . to intercept a wire, oral, or electronic communication" when "one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(c) (2015); *see Hammond*, 286 F.3d at 192 (joining the First, Second, Eighth, and Ninth Circuits in concluding the consent exception applies to prisoners who are "required to permit monitoring as a condition of using prison telephones"); *see also United States v. Frink*, 328 F. App'x 183, 189–90 (4th Cir. 2009) (finding the consent exception to the prohibition of recording calls applied when the message that the call was "subject to monitoring and recording" played at the beginning of each telephone call).

The law enforcement and consent exceptions to Title III render Saluda County Detention Center's (SCDC's) recording of Martin's conversations permissible. The law enforcement exception applies because the recordings of Martin's conversations with Gantt were made as part of SCDC's routine monitoring. Janice Ergle, the custodian of records for all phone conversations at SCDC, testified that records of the phone conversations were kept in the ordinary course of business and were monitored as a security measure. Additionally, Martin consented to having his conversations intercepted. Prior to an inmate using the phone at SCDC, a recording plays and alerts the inmate that the conversation could be monitored. Martin consented to having his calls recorded by continuing to use SCDC's phone after the warning message played.

Additionally, we find the recording of Martin's jail calls did not violate the Fourth Amendment's protections against unreasonable searches and seizures. "A government agent's search is unreasonable when it infringes on 'an expectation of privacy that society is prepared to consider reasonable.'" *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). In order to have a legitimate expectation of privacy, one must have (1) a subjective expectation of privacy that (2) is objectively reasonable, i.e., one that society is willing to recognize as reasonable. *Id.* Prisoners have neither a subjective nor an objective expectation of privacy in phone calls made on prison telephones. *United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996). A prisoner does not have a subjective expectation of privacy when the prisoner is notified that his calls are being monitored. *Id.* at 290. Further, no prisoner should reasonably expect privacy in outbound telephone calls due to the severe curtailing of other privacy rights by virtue of being imprisoned. *See id.* at 290–91; *see also United States v. Clark*, 651 F. Supp. 76, 81 (M.D. Pa. 1986) (finding prisoners do not have a legitimate expectation of privacy in prison telephone conversations because prisons routinely monitor and record phone conversations to enhance security).

Martin had neither a subjective nor objective expectation of privacy in his prison telephone calls with Gantt. Martin did not have a subjective expectation of privacy because, as discussed above, he was notified that his calls were being monitored. Additionally, even if Martin had a subjective expectation of privacy, any such expectation was not objectively reasonable. To hold otherwise would be inconsistent with the recognition that prisoners have severely curtailed privacy rights and would frustrate SCDC's ability to preserve security in its facility.

3.     We find the trial court properly refused to charge the jury on the lesser-included offense of second-degree burglary. A trial court's decision not to charge the jury on a lesser-included offense is reviewed for an abuse of discretion. *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166 (2007). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.* at 570, 647 S.E.2d at 166–67. "A trial [court] must charge a lesser[-]included offense if there is any evidence from which the jury could infer the defendant committed the lesser rather than the greater offense." *State v. White*, 361 S.C. 407, 412, 605 S.E.2d 540, 542 (2004). The "presence of evidence to sustain [a] crime of a lesser degree determines whether it should be submitted to the jury and [the] mere contention that [the] jury might accept [the] State's evidence in part and might reject it in part will not suffice." *State v. Tyndall*, 336 S.C. 8, 22, 518 S.E.2d 278, 285 (Ct. App. 1999). Second-degree burglary is a lesser-included offense of first-degree burglary. *State v. Goldenbaum*, 294 S.C. 455, 457, 365 S.E.2d 731, 732 (1988) (finding the trial court properly refused to charge the lesser-included offenses of second- and third-degree burglary because "[t]here was no evidence . . . from which the jury could infer that [the] appellant committed second or third rather than first[-]degree burglary").

The trial court properly refused to charge second-degree burglary because there is no evidence from which the jury could infer it was daytime when the burglary occurred. In addition to the testimony from the victim, Dianne Williams that "[i]t wasn't quite dark," the victim further testified that it was around 8:00 p.m. when the burglary occurred and she called 911 immediately afterward. When Martin testified to establish his defense of alibi, he stated that it was "good and dark" around 8:00 p.m. Chief Jared Goldman, of the Saluda County Sheriff's Office, testified he arrived on the scene at 8:05 p.m., shortly after the burglary occurred, and that "[i]t was dark at that time." The trial court took judicial notice of the times for sunset and twilight on December 13, 2013, which, according to the U.S. Naval Observatory Astronomical Application Department, were 5:19 p.m. and 5:49 p.m., respectively. Furthermore, Williams' husband corroborated that it was dark when the burglary occurred.

4.     We find Martin's argument that the solicitor's opening and closing statements so infected the trial with unfairness that they made his resulting conviction a denial of due process is not preserved because Martin did not object to the solicitor's statements. *See State v. Webb*, 389 S.C. 174, 183–84, 697 S.E.2d 662, 667 (Ct. App. 2010) ("In order to preserve an error for appellate review, a defendant must make a contemporaneous objection on a specific ground." (quoting *State v. Blalock*, 357 S.C. 74, 79, 591 S.E.2d 632, 635 (Ct. App. 2003))); *see also State v. Franklin*, 318

S.C. 47, 58, 456 S.E.2d 357, 363 (1995) (finding the appellant's argument regarding the solicitor's closing argument was not preserved because the appellant did not object to the closing argument at trial).

5.     We find Martin's argument that the trial court's cumulative errors require reversal of his conviction is not preserved because he did not raise the argument to the trial court. *See Garner*, 389 S.C. at 66, 697 S.E.2d at 617 ("[I]n order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court.]"); *id.* ("[A]rguments raised for the first time on appeal are not preserved for [appellate] review[.]"); *see also State v. Beekman*, 405 S.C. 225, 236–37, 746 S.E.2d 483, 489 (Ct. App. 2013) (finding the cumulative error doctrine must be raised to and ruled upon by the trial court for it to be preserved for appellate review).

**AFFIRMED.**[1]

**GEATHERS, MCDONALD, and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.