**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Cole Brooks Gray, Appellant.

Appellate Case No. 2017-002265

———————

Appeal From Anderson County
Alexander S. Macaulay, Circuit Court Judge

———————

Unpublished Opinion No. 2021-UP-284
Submitted October 1, 2020 – Filed July 21, 2021

———————

**AFFIRMED**

———————

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General William Frederick Schumacher, IV,
both of Columbia; and Solicitor David Rhys Wagner, Jr.,
of Anderson, all for Respondent.

———————

**PER CURIAM:** Cole Brooks Gray appeals his convictions for failure to stop for a blue light, receiving stolen goods valued at more than $2,000 but less than $10,000, and trafficking in more than 100 grams of methamphetamine. Gray

asserts the trial court erred in (1) admitting an unredacted jailhouse phone recording made by him which contained profanity, racial slurs, and hearsay, and portrayed him as a habitual criminal, because the minimal probative value was substantially outweighed by the danger of unfair prejudice; (2) allowing a law enforcement officer to testify he had been previously arrested, since this was inadmissible bad character evidence; and (3) allowing the solicitor a reply closing argument when he presented no evidence in his defense and, thereafter, refusing to grant his motion for mistrial after improperly allowing the solicitor to have the last closing argument. We affirm.

1.      As to admission of the entire jailhouse phone recording, we find any error harmless. "An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result." *State v. Chavis*, 412 S.C. 101, 109, 771 S.E.2d 336, 340 (2015). "Whether an error is harmless depends on the circumstances of the particular case." *Id.* "No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *Id.* at 109-10, 771 S.E.2d at 340. A trial court's error in admitting certain testimony may be deemed harmless if there is "other overwhelming evidence of guilt." *Id.* at 110 n.7, 771 S.E.2d at 340 n.7. Here, the dash camera recordings from the officers' cars depicted Gray: fleeing from an officer when the officer attempted to make a traffic stop; leading law enforcement on a very dangerous chase for over thirty minutes in medium to heavy traffic, which included colliding with two civilian cars, nearly hitting other vehicles, and employing dangerous measures to avoid running over at least two sets of stop sticks or otherwise being stopped; throwing a large quantity of suspected drugs from the car after hitting a set of stop sticks; and finally stopping only when he came upon and ran over a fourth set of deployed stop sticks. Further, the State presented uncontroverted evidence: that the large bag thrown out the truck window by Gray contained methamphetamine and there was an additional small bag of methamphetamine in the truck on the driver's seat; the truck, valued at over $2,000, was stolen approximately two weeks before this incident; the truck displayed a license plate that did not belong to the truck; and the truck bed also held an additional license plate. Additionally, even assuming the statements complained of by Gray in the jailhouse phone recording constitute hearsay, any prejudicial effect is insignificant. As to his statement, "They said I had 120 grams," the State presented evidence that Gray was in possession of a total of at least 112 grams[1] of methamphetamine and the jury was fully aware that Gray was

---

[1] Though the defense urged the jurors to consider that the 109.34 gram weight for the bag of methamphetamines thrown from the truck was inaccurate because it was

charged with trafficking in over 100 grams of the drug. We fail to see how the reference to a slightly larger weight prejudiced Gray. Also, even assuming the statement concerning him having someone else's food stamp card in his possession might have a negative implication to it, there is nothing to show his possession of the card was in any manner illegal or improper. If properly admitted evidence of guilt is overwhelming and the prejudicial effect of improperly admitted evidence is insignificant by comparison, the admission of the improper evidence may be deemed harmless error. *See State v. McDonald*, 412 S.C. 133, 142, 771 S.E.2d 840, 844 (2015) ("In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of [improper evidence] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." (quoting *Schneble v. Florida*, 405 U.S. 427, 430 (1972))). As to the offensive language, any error in admitting the entire phone call recording does not warrant reversal of Gray's convictions, as it was harmless beyond a reasonable doubt. *See State v. King*, 422 S.C. 47, 69-70, 810 S.E.2d 18, 30 (2017) (finding admission of King's detention center phone recording that was "riddled with profanity, racial slurs, and impermissible references to King's prior bad acts" was harmless with respect to King's armed robbery and possession of a firearm during the commission of a violent crime charges noting: (1) under a harmless error analysis, our jurisprudence requires us to question whether, beyond a reasonable doubt, the trial error did not contribute to the guilty verdict and (2) an error must result in prejudice to the appealing party in order to warrant reversal). Based upon our review of the entire record, we find any error in the admission of the phone recording in its entirety is harmless beyond a reasonable doubt. *See State v. Thompson*, 352 S.C. 552, 562, 575 S.E.2d 77, 83 (Ct. App. 2003) ("Where a review of the entire record establishes the error is harmless beyond a reasonable doubt, the conviction should not be reversed.").

2. As to the admission of testimony from a law enforcement officer indicating Gray may have been previously arrested, we find no reversible error. First, even if the trial court improperly considered this testimony cumulative to evidence it ruled admissible in the phone recording, there is other cumulative evidence in the record

---

"scraped" up from a dirty road, no evidence was submitted that the road was particularly dirty, no evidence indicated any other vehicles travelled on the area of the road where the bag was thrown between the very short time it was thrown from the truck and law enforcement secured it, and the only evidence in the record is that the officers carefully and meticulously picked up the crystals and that the forensic drug chemist who analyzed the item observed no debris or other foreign objects in the bag beside the crystal-like substance.

in this regard. In particular, when discussing the chase, two deputies testified—without objection—that they knew Gray and could identify him as the driver, thus providing at least some possible indication that law enforcement had previous dealings with Gray. *See State v. Haselden*, 353 S.C. 190, 196, 577 S.E.2d 445, 448 (2003) ("[E]ven assuming [] evidence [is] objectionable, . . . [when] there is other properly admitted evidence of conduct demonstrating the particular character trait in question, there is no reversible error"); *id.* ("The erroneous admission of character evidence is harmless beyond a reasonable doubt if its impact is minimal in the context of the entire record."); *State v. Cheeseboro*, 346 S.C. 526, 550, 552 S.E.2d 300, 313 (2001) ("[When] there is other properly admitted evidence of conduct demonstrating the particular character trait in question, . . . there is no reversible error."); *State v. Kirton*, 381 S.C. 7, 37-38, 671 S.E.2d 107, 122-23 (Ct. App. 2008) (holding the introduction of inadmissible evidence is harmless when the evidence is merely cumulative to other unobjected-to evidence). At any rate, we note the only requested relief by defense counsel was that of a mistrial. We find the brief, unsolicited response of the officer was somewhat vague and was not so egregious as to warrant a mistrial. *See State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 627-28 (2000) ("The granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion amounting to an error of law."); *id.* at 63, 530 S.E.2d at 628 ("A mistrial should only be granted when absolutely necessary."); *id.* ("In order to receive a mistrial, the defendant must show error and resulting prejudice."). Finally, we find there is overwhelming evidence of Gray's guilt such that any error in the admission of the testimony was harmless. *Chavis*, 412 S.C. at 109-10, 771 S.E.2d at 340 ("An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result. Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." (citations omitted)); *id.* at 110 n.7, 771 S.E.2d at 340 n.7 (noting a trial court's error in admitting certain testimony may be deemed harmless if there is "other overwhelming evidence of guilt").

3. As to allowing the solicitor a reply closing argument when Gray presented no evidence in his defense, we find the trial court clearly erred. However, based upon our review, we find the error in allowing the State a reply argument was harmless beyond a reasonable doubt and, therefore, find no reversible error in the denial of Gray's motion for mistrial after the trial court improperly allowed the solicitor to have the last closing argument. The law is well settled that a criminal defendant who introduces no testimony or evidence is entitled to the last closing

argument to the jury. *See State v. Beaty*, 423 S.C. 26, 37, 813 S.E.2d 502, 507 (2018) ("[I]n all cases in which a defendant calls no witnesses, he should have the privilege of concluding to the jury."); *State v. Mouzon*, 326 S.C. 199, 203, 485 S.E.2d 918, 921 (1997) ("In a criminal prosecution, [when] a defendant introduces no testimony, he is entitled to the final closing argument to the jury."). Further, we are concerned about the denial of such a substantial right. Nonetheless, our law does not provide for automatic reversal for such error. Rather, we are required to engage in a harmless error analysis. *See Mouzon*, 326 S.C. at 204, 485 S.E.2d at 921 ("Although the right to open and close the argument to the jury has been described as 'a substantial right, the denial of which is reversible error,' . . . we find that such an error is still subject [to a] harmless error analysis." (quoting *State v. Rodgers*, 269 S.C. 22, 24-25, 235 S.E.2d 808, 809 (1977))). Here, the solicitor's reply argument was very brief, and solely addressed the trafficking charge. We therefore confine our analysis of this issue to the trafficking charge.

In his closing argument, the solicitor noted the drug laws are set up based upon the weight of the drug and mentioned the various charges of possession, possession with intent to distribute, and trafficking. He then focused on possession of a certain amount of the drug as being sufficient to show trafficking and argued the evidence submitted showed they met the threshold amount of 100 grams of methamphetamine. The solicitor further observed the jury would have an opportunity to look at the drugs for themselves, that the officers used gloves to pick up the drugs thrown from the window "piece by piece," and the officer secured the drugs thrown into the road within a minute, during which time no other vehicles drove through the area. He also argued to the jury, "You can look at [the drugs] and tell, and the chemist testified there is no debris in here. I mean, it's all solid crystals. There's not chunks of asphalt. There's not sand. They picked it up with gloves and put it right back in while it laid there on a nice clear day. So the weight, I submit to you, is accurate as far as being 109 grams for that level of trafficking."

Defense counsel argued during closing that "there's a number of things that can be involved in trafficking," and suggested the use of the statutory language to determine if the State proved its case beyond a reasonable doubt. He attacked the State's argument on the trafficking charge by noting it failed to show that Gray sold or delivered the drugs to anyone or that he transported them over the state line. He suggested that the jury could find him guilty of possession of methamphetamine based upon the 3.3 grams found in the truck. As to the bag thrown from the truck, counsel argued the road on which it landed had consistent traffic and, from his own knowledge, farm vehicles travelled on the road and that road was especially dirty.

He maintained the officers "scraped" the material off the road, running the risk of contaminating the evidence. Defense counsel urged the jurors to find a reasonable doubt as to the weight, and to find him guilty of a lesser charge and acquit him of the trafficking in over 100 grams of methamphetamine charge.

In reply, the solicitor explained that trafficking included selling, manufacturing, delivering, purchasing, bringing into the State, providing financial assistance, otherwise aiding, abetting or conspiring in those actions, or being "knowingly in actual or constructive possession" or "knowingly attempt[ing] to become in actual or constructive possession of a quantity of methamphetamine." He stated he did not assert Gray sold the methamphetamine; rather, Gray knowingly possessed over 100 grams of the drug. He further argued the crystals were not "scraped up off the road" but were "meticulously picked up by an evidence technician and officers with gloves [and] put back in that bag," and there was no road debris. This was the extent of the reply argument.

Here, the solicitor gave a very brief reply argument to the jury, including the statutory elements included in trafficking. The solicitor pointed out that he was relying on Gray's possession of over 100 grams of methamphetamine—an argument he had already made to the jury in his initial closing argument. He also argued the officers meticulously picked up the substance from the road and there was no debris in the substance, which he had also thoroughly covered in his initial closing argument. Thus, with the exception of noting the other specific acts the law includes in the elements of trafficking, the solicitor did not offer any new argument that was not already covered in his initial closing argument to the jury. Notably, defense counsel had already explained to the jury that there was statutory language that included "a number of things that can be involved in trafficking," and went on to argue some that the State had not shown. Further, the trial court thereafter correctly charged the jury the statutory elements that comprise trafficking.[2] While defense counsel pointed out to the jury in his closing that the State did not show many of the other elements that would encompass trafficking, the State did not rely on these other elements and focused solely on Grays's possession of the threshold

---

[2] *See* S.C. Code Ann. § 44-53-375(C) (2018) ("A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of methamphetamine . . . is guilty of a felony . . . .").

amount of the drug. Given the statutory charge on trafficking provided to the jury by the trial court, we fail to see how Gray was prejudiced by the erroneous reply closing that was allowed the State. *See Beaty*, 423 S.C. at 45, 813 S.E.2d at 512 (holding, though the State perhaps failed to restrict its reply argument to matters raised by the appellant as required, and the appellant was not allowed to respond to three points made by the State in its reply argument, the appellant suffered no prejudice). Further, in considering the State's initial closing argument, the closing argument presented by the defense, and the limited reply argument given by the State, we find no reasonable probability the error contributed to Gray's conviction. *Cf. Mouzon*, 326 S.C. at 205, 485 S.E.2d at 921-22 (finding the court could not conclude the trial court's error in failing to allow the defendant last closing argument was harmless beyond a reasonable doubt because there was a reasonable possibility the error contributed to his conviction).

**AFFIRMED.**[3]

**HUFF, WILLIAMS, and GEATHERS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.